UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARGARITA GONZALEZ,

*Plaintiff*,

v.

SUTTON PARK CENTER FOR NURSING &
REHABILITIATION,

*Defendant*.

No. 23-CV-8788 (KMK)

<u>ORDER & OPINION</u>

Appearances:

Margarita Gonzalez
Mount Vernon, NY
*Pro Se Plaintiff*

Michael James Del Piano, Esq.
Teresa Lynn Staiano, Esq.
Lewis Johs Avallone Aviles, LLP
Islandia, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Margarita Gonazlez ("Plaintiff"), proceeding pro se, brings this Action against the Sutton

Park Center for Nursing and Rehabilitation ("Sutton Park" or "Defendant"), alleging

discrimination, hostile work environment, and retaliation on the basis of age, race, and national

origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981

("Section 1981"), the Age Discrimination Employment Act of 1967 ("ADEA"), 29 U.S.C.

§§ 621 et seq., and the New York State Human Rights Law (the "NYSHRL").  (*See generally*

Compl. (Dkt. No. 1); Am. Compl. (Dkt. No. 20).)  Before the Court is Defendant's Motion to

Dismiss (the "Motion").  For the reasons set forth below, the Motion is denied in part and granted in part.

## I.  Background

### A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Plaintiff attaches to her Complaint 355 pages of exhibits, (Dkt. No. 1-1), and to her Amended Complaint a "right to sue" letter dated July 12, 2023, that she received from the U.S. Equal Employment Opportunity Commission ("EEOC"), (Am. Compl. 15), and an employment

discrimination complaint filed with the Westchester County Human Rights Commission ("WCHRC") on December 10, 2021, (*id.* 16–18).[1] Defendant also attaches to its briefing WCHRC's determination and order dated September 7, 2022, (Decl. of Michael J. Del Piano ("Del Piano Decl."), Ex. B ("WCHRC Determination") (Dkt. No. 25-2)), and the EEOC Charge that Plaintiff filed on June 10, 2022, (*id.*, Ex. C ("EEOC Charge") (Dkt. No. 25-3)).

The Court will take judicial notice of Defendants' documents because it "may consider Plaintiff's filings with agencies and any subsequent agency determination when evaluating the instant Motion because they are all matters of public record." *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *4 n.2 (S.D.N.Y. July 2, 2020) (citing *Troise v. SUNY Cortland NY*, No. 18-CV-734, 2019 WL 3817387, at *4 (N.D.N.Y. Aug. 14, 2019) (taking judicial notice of the plaintiff's NYSDHR complaint, NYSDHR determination, and EEOC's right-to-sue letter)); *Sternkopf v. White Plains Hosp.*, No. 14-CV-4076, 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015) (taking judicial notice of the plaintiff's complaint to the NYSDHR, a notice of charge from the EEOC, the NYSDHR's determination

---

[1] The documents attached to Plaintiff's original Complaint are numerous and of varying relevance, including: undated handwritten and typed notes, (Dkt. No. 1-1 at 4–29, 31–46, 206–10, 212–25); emails and screenshots associated with Plaintiff's job search after leaving Sutton Park, (*id.* 47–106, 321–23); a letter from the New York State Department of Labor in response to Plaintiff's filing a complaint on September 27, 2021, (*id.* 107–11); unspecified photographs and scans, (*id.* 112–22, 202, 211, 288, 290, 294–96, 302, 310–12, 316–18); a letter to a "Mr. Baker" dated February 5, 2022, (*id.* 124); "responses" to exhibits, (*id.* 125–90, 227–31); emails from Plaintiff to the New York State Department of Health sharing complaints concerning Sutton Park, (*id.* 191–201); text messages sent/received by Plaintiff on unspecified dates, (*id.* 203–05, 269–89, 291–93, 298, 306–08, 313–15); "statements" as to Plaintiff's character from her former co-workers, (*id.* 232–43); a letter from Sutton Park dated September 13, 2021, recognizing Plaintiff's "resignation," (*id.* 244); a "staffing improvement plan" signed by Plaintiff and on which Plaintiff handwrites her objections to the document, (*id.* 247); work emails to/from Plaintiff dated between May and September 2021, (*id.* 248–68, 320, 324–32); Plaintiff's paystubs, (*id.* 333); and printouts of nurses' shifts for various dates from 2019 to 2021, (*id.* 334–55).

and order, and the EEOC's dismissal and notice of rights letter); *see also Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006) ("[P]laintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice." (citation omitted)).  The Court will consider Plaintiff's exhibits because Plaintiff is proceeding pro se and the exhibits are attached to her Complaint.  *Murphy v. Rodriguez*, No. 23-CV-6998, 2024 WL 4290723, at *2 (S.D.N.Y. Sept. 25, 2024) (considering exhibits attached to pro se complaint when deciding motion to dismiss); *Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (same).

The Court notes that it may consider these documents for the fact that they exist, but not for the truth of the matters asserted therein.  *See Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021) ("The [c]ourt may . . . consider such documents for the fact that they exist, but not for the truth of the matters asserted therein." (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), *appeal withdrawn*, No. 21-1245, 2021 WL 3575023 (2d Cir. June 23, 2021); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *7 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice of filings in a court case submitted by a party "only to establish the fact of such filings and what they contained, not for the truth of the matter asserted therein" (citation omitted)).

B.  Factual Background

The following facts are taken from Plaintiff's Complaint, Amended Complaint, and attached exhibits and are assumed to be true for the purposes of ruling on the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is a 55-year-old Puerto Rican woman.  (Am. Compl. ¶ 1.)  From December 3, 2018, to September 13, 2021, Plaintiff was a Staffing Coordinator at Sutton Park, a nursing home.  (*Id.* ¶¶ 2–3.)  Plaintiff's duties included "ensuring that enough staff were scheduled during each shift."  (*Id.* ¶ 3.)  Plaintiff alleges that, during an unspecified period of time, there were under 20 Hispanic employees at Sutton Park and a total of seven Hispanic employees in the Administration Department.  (*Id.* ¶ 4.)  In or about September 2020, Julie Carroll ("Carroll"), a white woman, became administrator of Sutton Park.  (*Id.* ¶ 5.)  Plaintiff's supervisor, Director of Nursing Kelly Crowe ("Crowe"), a white woman, reported to Carroll.  (*Id.*)

Plaintiff alleges that Crowe and Carroll approved requests by non-Hispanic employees for office equipment and denied those requests if made by Hispanic employees.  (*Id.* ¶ 20.)  Plaintiff further alleges that Carroll, Crowe, and Assistant Director of Nursing Sheree Denny ("Denny"), a half-Black, half-white woman, would fabricate performance issues, such as by "creat[ing] fake texts under Plaintiff's name . . . to make it look[] like Plaintiff wasn't doing her job," (*id.* ¶ 8), or having Denny direct Plaintiff to perform a task, then later deny that she had so directed Plaintiff, (*id.* ¶ 17), or attempting to get another Sutton Park employee "write Plaintiff up for canceling patients' medical appointments," (*id.* ¶ 19).  Carroll, Crowe, and Denny would contact Plaintiff on weekends or during vacation with work-related questions.  (*Id.* ¶¶ 7, 13.)  Between March and September 2021, Carroll, Crowe, and Denny purposefully interrupted Plaintiff's lunch with a fake emergency every day.  (*Id.* ¶ 11.)

On March 14, 2021, Plaintiff was informed by co-workers that Carroll, Denny, and Crowe were "talking bad" about Plaintiff and that Carroll had referred to Plaintiff as a "spic," a derogatory term for Puerto Ricans and Hispanic people in general.  (*Id.* ¶ 10.)  On April 9, 2021, Plaintiff received an anonymous call that Carroll and Denny were "trashing [her] name."  (*Id.*

¶ 14.)  On May 12, 2021, Carroll and Crowe ignored Plaintiff's request for help or an ambulance when she developed a lung infection, prompting Plaintiff to walk to the emergency room with the help of a co-worker.  (*Id.* ¶ 18.)

On July 15, 2021, Denny had Plaintiff sign a "staff improvement plan," that Plaintiff believed was a "plan to improve staffing," but actually concerned Plaintiff's "performance issues."  (*Id.* ¶ 25.)  At some point prior to August 5, 2021, Carroll, Crowe, and Denny stopped inviting Plaintiff to building events.  (*Id.* ¶ 27.)  On August 18, 2021, Carroll made comments about Plaintiff's clothing and questioned whether it was appropriate for work.  (*Id.*¶ 31.)  "Since that time, other employees including [Crowe and Denny] started making comments about the way Plaintiff dressed.  (*Id.*)

Plaintiff alleges that Carroll and Crowe purposefully interfered with her payroll-related duties.  Specifically, Carroll and Crowe would delay review of Plaintiff's payroll work such that she was made to work late or on weekends, in turn delaying Plaintiff's sending payroll to Sutton Park Corporate, (*id.* ¶¶ 16, 32), or prevent Plaintiff from handing out payroll checks, resulting in staff yelling at Plaintiff in her office, (*id.* ¶ 34).  On August 16, 2021, Carroll revoked, without explanation, Plaintiff's access to facility cameras, which Plaintiff used to complete her payroll duties.  (*Id.* ¶ 30.)

Plaintiff made multiple attempts to complain about her treatment.  On August 13, 20, and 27, 2021, Plaintiff attempted to call human resources ("HR") to report discrimination and bullying, but "nobody ever picked up Plaintiff's call."  (*Id.* ¶ 28.)  Plaintiff left several voicemails for Sutton Park Vice President Amy Elba, but never received a response.  (*Id.* ¶ 29.)  On September 1, 2021, Plaintiff complained to Crowe "about the hostile work environment and the discrimination from [Carroll, Crowe, and Denny]."  (*Id.* ¶ 35).

On September 7, 2021, Crowe informed Plaintiff that Sutton Park Corporate wanted to "demote Plaintiff to a unit clerk" because she "submitted the payroll late to Corporate." (*Id.* ¶ 36.) This was the first time Plaintiff learned of any performance issues and Plaintiff refused to "tak[e] the new position." (*Id.*) On September 9, 2021, Carroll asked Plaintiff "to deal with the unit clerks," to which Plaintiff responded that this was "not part of her job duties." (*Id.* ¶ 39.) That same day, Plaintiff texted "Ms. Rodyln" at Sutton Park to "inform[] her of everything . . . including the discrimination and work disruption by [Carroll, Crowe, and Denny] that Plaintiff ha[d] been experiencing at work." (*Id.* ¶ 38.)

On September 13, 2021, Carroll, Crowe, and Denny met with Plaintiff and notified her that Sutton Park Corporate had sent an email indicating they "want[ed] to move her to a unit clerk position." (*Id.* ¶ 41.) When Plaintiff asked to see the email, Carroll yelled "No[,] you're not seeing anything" and said "[i]f [Plaintiff] d[id]n't take the job, [she would be] fired so go upstairs and pack." (*Id.*) Plaintiff "packed her stuff and left . . . work early." (*Id.*) Plaintiff alleges that she "did not voluntarily quit her job." (*Id.*) Plaintiff found it difficult to find a comparable job because Carroll and Crowe provided negative references to potential employers. (*Id.* ¶ 44.) Plaintiff found a new job in November 2021. (*Id.*)

On December 10, 2021, Plaintiff filed a complaint with WCHRC. (*Id.* ¶ 45.) On September 7, 2022, WCHRC determined that there was no probable cause to believe that Defendants engaged in unlawful discrimination. (*See generally* WCHRC Determination.) On June 10, 2022, Plaintiff filed her EEOC Charge, and on July 12, 2022, she received a right to sue letter. (Am. Compl. ¶¶ 48–49.)

C.  Procedural Background

Plaintiff initiated this Action on October 5, 2023.  (*See* Compl.)  In lieu of an answer, Defendant moved to dismiss.  (*See* Dkt. Nos. 15–17.)  The Court granted Plaintiff's request to file an amended complaint and denied Defendant's initial motion to dismiss.  (Dkt. No. 19.)  On March 29, 2024, Plaintiff filed her Amended Complaint.  (Am. Compl.)  On May 3, 2024, the Court set a briefing schedule.  (Dkt. No. 23.)

On June 7, 2024, Defendant filed the instant Motion.  (*See* Not. of Mot. (Dkt. No. 24); Del Piano Decl. (Dkt. No. 25); Def's Mem. in Supp. ("Def's Mem.") (Dkt. No. 26).)  Plaintiff did not file an Opposition, (*see generally* Dkt.), despite that fact that it was due by no later than July 7, 2024, (*see* Dkt. No. 23).  Instead of filing an Opposition by July 4, 2024, Plaintiff filed a Second Amended Complaint on July 21, 2024.  (Dkt. No. 27.)  Two days later, Plaintiff sent the Court a letter in which she requested an extension to file her Opposition.  (Dkt. No. 28.)  On July 25, 2024, the Court noted that the Amended Complaint and Second Amended Complaint appeared to be identical and that Plaintiff had neither requested leave to file nor explained the basis for her latest complaint.  (Dkt. No. 29.)  Accordingly, the Court directed Plaintiff to request leave to amend or file her Opposition by no later than August 8, 2024.  (*Id.*)  Plaintiff did neither. (*See generally* Dkt.)  On October 10, 2024, the Court issued an Order deeming Defendant's Motion fully submitted.  (Dkt. No. 30.)

## II.  Discussion

A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe the complaint "liberally and interpret it to raise the strongest arguments that it suggests." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  EEOC Exhaustion

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII [and ADEA] statutory scheme and, as such, a precondition to bringing such claims in federal court." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 437

(S.D.N.Y. 2023) (alterations adopted) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)).  Administrative exhaustion serves "to avoid unnecessary judicial action by the federal courts by '[giving] the administrative agency the opportunity to investigate, mediate, and take remedial action.'"  *Sackett v. Dirlam*, No. 22-CV-6245, 2023 WL 4206520, at *4 (W.D.N.Y. June 26, 2023) (alteration in original) (quoting *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985)).  "Thus, before filing a complaint in federal court, plaintiffs asserting Title VII and ADEA claims must first exhaust their administrative remedies by filing a complaint with the EEOC *or the equivalent state agency*."  *Ashmeade*, 2024 WL 4266391, at *10 (emphasis added) (alterations adopted) (quotation marks omitted) (quoting *Kaba v. Hope Home Care*, No. 23-CV-9512, 2024 WL 1679327, at *2 (E.D.N.Y. Apr. 18, 2024)).  "The exhaustion requirement applies not only to causes of action but also to underlying factual allegations."  *Kirkland-Hudson*, 665 F. Supp. 3d at 439 (quoting *Fanelli v. New York*, 51 F. Supp. 3d 219, 227 (E.D.N.Y. 2014)).  The 300-day requirement "is analogous to a statute of limitations."  *Eliav v. Roosevelt Island Operating Corp.*, No. 22-CV-9978, 2024 WL 196477, at *3 (S.D.N.Y. Jan. 18, 2024) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)).

Defendant argues that Plaintiff failed to administratively exhaust her Title VII and ADEA claims.  (Def's Mem. 11–15.)  Plaintiff filed her EEOC Charge on June 10, 2022, (*see* EEOC Charge), and filed her WCHRC complaint on December 10, 2021, (*see* WCHRC Determination 3).  Plaintiff's EEOC Charge lists national origin and "color" as bases for discrimination, (EEOC Charge 2), while her WCHRC complaint lists race, color, national origin, ethnicity and age, (*see* Am. Compl. 16).  For Title VII and ADEA purposes, "a plaintiff must exhaust his or her administrative remedies by filing a claim with *either* the EEOC or the proper state or *local agency*."  *Conkling v. Brookhaven Sci. Assocs., LLC*, No. 10-CV-4164, 2012 WL 2160439, at *4

(E.D.N.Y. June 12, 2012) (emphasis added); *Woldemariam v. Azar*, No. 18-CV-297, 2023 WL

5671942, at *2 (E.D.N.Y. Sept. 1, 2023) (noting that "it is well-settled in the Second Circuit that

a plaintiff may bring an employment discrimination action under Title VII or the ADEA only

after filing a timely charge with the EEOC or with a State or local agency" (alteration adopted)

(citation omitted)).

Accordingly, because Plaintiff filed her WCHRC complaint on December 10, 2021, and

because all allegations in this Action took place within the 300 days preceding this date and it

includes all bases for discrimination upon which she brings the claims in this Action, the Court

finds she has exhausted her administrative remedies.

C.  Analysis

Plaintiff alleges discrimination, retaliation, and hostile work environment claims under

Title VII, the ADEA, Section 1981, and the NYSHRL.  These claims are all subject to the

familiar and straightforward *McDonnell Douglas* burden-shifting analysis.  *See Hernandez v.*

*Kwiat Eye & Laser Surgery, PLLC*, No. 23-7679, 2024 WL 5116365, at *1 (2d Cir. Dec. 16,

2024) (summary order) (noting that "claims of age, sex, race[,] and national origin discrimination

(including associated claims of retaliation) under [Title VII, the ADEA, and the NYSHRL] are

each subject to the *McDonnell Douglas* burden-shifting analysis"); *Carr v. N.Y.C. Transit Auth.*,

76 F.4th 172, 178 (2d Cir. 2023) (noting that retaliation claims under Title VII, the ADEA, and

Section 1981 are subject to the *McDonnell Douglas* analysis); *Nazon v. Time Equities, Inc.*,

No. 21-CV-8680, 2022 WL 18959570, at *10 (S.D.N.Y. Nov. 22, 2022) (noting that

discrimination claims under Title VII, the ADEA, Section 1981, and the NYSHRL are subject to

the *McDonnell Douglas* analysis), *report and recommendation adopted*, 2023 WL 1516905

(S.D.N.Y. Feb. 3, 2023).

1.  Age Discrimination

Defendant contends that Plaintiff has failed to state a plausible claim for age

discrimination.  (Def's Mem. 15–20.)  The Court agrees.

"The ADEA protects employees over [forty] years of age from age discrimination in

employment."  *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157 (S.D.N.Y. 2022)

(citing 29 U.S.C. § 631(a)); *Ashmeade*, 2024 WL 4266391, at *13 (same).  "In order to establish

a prima facie case of age discrimination in violation of the ADEA, a plaintiff must show:

(1) that [s]he was within the protected age group (more than [forty] years old); (2) that [s]he was

qualified for h[er] position; (3) that [s]he experienced adverse employment action; and (4) that

such action occurred under circumstances giving rise to an inference of discrimination."  *Kaba*,

2024 WL 1679327, at *3 (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir.

2010)); *see also Santiago*, 634 F. Supp. 3d at 157 (same).  Crucially, for ADEA claims, a

plaintiff must show that the discriminatory motive "was a but[-]for cause" of the adverse

employment action, as opposed to just a factor in the decision.  *McCormack v. IBM*, 145 F. Supp.

3d 258, 266 (S.D.N.Y. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173 (2009));

*Santiago*, 634 F. Supp. 3d at 157 (same).  To establish causation under that standard, "the

plaintiff must plead facts suggesting 'that age was the reason that the employer decided to act.'"

*Santiago*, 634 F. Supp. 3d at 157 (quoting *Gross*, 557 U.S. at 176).  In other words, "'but-for'

causation does not require proof that [discrimination] was the *only* cause of the employer's

action, but [rather] that the adverse action would not have occurred in the absence of the

[discriminatory] motive."  *Id.* (emphasis added) (citing *Zann Kwan v. Andalex Grp. LLC*, 737

F.3d 834, 846 n.5 (2d Cir. 2013)).

Defendant does not appear to dispute that Plaintiff was over forty years old during the relevant time period or that she was qualified for her position. Defendant argues that Plaintiff has not plausibly alleged an adverse employment action or an attendant inference of discrimination as it relates to her age. (Def's Mem. 16–19.)

### a. Adverse Employment Action

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (emphasis removed) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). The Second Circuit has instructed that:

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (quoting *Sanders*, 361 F.3d at 755). "[A]dverse employment actions must be 'more than trivial, insubstantial, or petty.'" *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 113 (S.D.N.Y. 2022) (alteration adopted) (quoting *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 288 (S.D.N.Y. 2013)).

Plaintiff characterizes her departure from Sutton Park as a "demot[ion] and terminat[ion]." (Am. Compl. 5.) Specifically, Plaintiff alleges that she was offered a "unit clerk position," which she refused and then immediately "packed her stuff and left work early," which she characterizes as her "not voluntarily quit[ting] her job." (*Id.* ¶ 41.) Plaintiff's pleading appears to be contradicted by materials she appended to her original Complaint. (*Compare id. with* Dkt. No. 1-1 at 245 (characterizing her departure from Sutton Park as her "quit[ting]" upon

learning that an unnamed individual "was spreading rumors [that] [the individual] demoted me.").)

However, Plaintiff's pleadings can also be read as alleging constructive discharge, which can be an adverse employment action, to the extent she was forced to either accept a demotion or be terminated.  *See Reach v. Healthfirst, Inc.*, No. 23-CV-8085, 2024 WL 4493769, at *2 (S.D.N.Y. Oct. 15, 2024) (noting that constructive discharge is an example of an adverse employment action (citing *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019)).  "A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (alteration adopted) (quotation marks omitted); *Walsh*, 375 F. Supp. 3d at 478 (same).  "Working conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Walsh*, 375 F. Supp. 3d at 478 (citation and quotation marks omitted).  Plaintiff alleges that her supervisor Carroll ignored her, (Am. Compl. ¶ 21), and attempted to get Plaintiff to accept a different position that Plaintiff considered a demotion, (*id.* ¶ 36, 39), and that Carroll, Crowe, and Denny interfered with Plaintiff's ability to timely finish her work, (*id.* ¶¶ 30, 32, 34).  "At the motion to dismiss stage, these allegations are sufficient to plausibly state a claim for constructive discharge." *Graber v. Cayuga Home for Child.*, No. 24-CV-470, 2024 WL 4870092, at *3 (N.D.N.Y. Nov. 22, 2024).

### b.  Inference of Discrimination

At this stage, "a plaintiff need only give plausible support to a minimal inference of a discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir.

2015) (quotation marks omitted).  "Yet 'a discrimination complaint must still at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'"  *Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452, at *10 (S.D.N.Y. Sept. 28, 2022) (alterations adopted) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

A showing of "[a]n inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to [the] plaintiff's protected class, . . . or indirectly by an allegation that [the] plaintiff was treated different from and less favorably than similarly situated peers." *Roache v. Long Island R.R.*, 487 F. Supp. 3d. 154, 172 (E.D.N.Y. 2020) (citing first *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984), then *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 208–09 (E.D.N.Y. 2017)).  Further, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  Alternatively, "[the] plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87).

The only allegation of Plaintiff's that relates to her age in any way concerns an incident on August 18, 2021, where Carroll told Plaintiff she "look[ed] like a teenager" when Plaintiff wore "a lace skirt."  (Am. Compl. ¶ 31.)  Plaintiff further alleges that, following this exchange, "other employees . . . started making comments about the way [she] dressed." (*Id.*)  In essence, Plaintiff alleges that comments by her supervisor and co-workers about her clothing constituted,

or raises an inference of, discrimination as it relates to her age.  Even accepting Plaintiff's position that she perceived these comments to be ageist, they are "not discriminatory because [they are] age-netural."  *Nielsen v. Pioneer Bank*, No. 15-CV-623, 2018 WL 4689056, at *3 (N.D.N.Y. Sept. 28, 2018) (collecting cases and noting that comments about an individual's dress did not raise an inference of discrimination).  Further, the fact that Plaintiff was above the age of forty "when first hired . . . substantially weakens any inference of discrimination on Defendant['s] part[.]"  *Klein v. Brookhaven Health Care Facility*, No. 17-CV-4841, 2023 WL 7413838, at *6 (E.D.N.Y. July 20, 2023) (quoting *Spires v. Metlife Grp., Inc.*, No. 18-CV-4464, 2019 WL 4464393, at *8 (S.D.N.Y. Sept. 18, 2019), *report and recommendation adopted*, 2023 WL 6619377 (E.D.N.Y. Oct. 11, 2023), *aff'd*, No. 23-7771, 2024 WL 5074485 (2d Cir. Dec. 11, 2024).

　　　　Assuming arguendo that these comments give rise to an inference of discrimination, Plaintiff has failed to connect these comments to her constructive discharge.  There are absolutely no allegations that comments about Plaintiff's clothing or age "was the 'but-for' cause—or, indeed, any cause at all of the employer's actions."  *Goldzweig v. Consol. Edison Co. of N.Y., Inc.*, No. 20-CV-4297, 2024 WL 5056350, at *4 (S.D.N.Y. Dec. 10, 2024) (internal quotation marks omitted) (quoting *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012) (summary order)), *appeal pending*, No. 25-89 (2d Cir. Jan. 14, 2025).  Nor does Plaintiff satisfy her burden in a manner approved of by other courts, such as by alleging that "someone 'significantly younger' replaced her," *Lockwood v. Dunkirk City Sch. Dist.*, No. 21-CV-941, 2024 WL 4347339, at *6 (W.D.N.Y. Sept. 30, 2024), or that her supervisors made remarks directly connecting Plaintiff's job performance to her age, *cf. Peterec v. TGI Fridays, Inc.*, No. 23-CV-8028, 2024 WL 4337526, at *7 (S.D.N.Y. Sept. 25, 2024) (finding that

17

comments "express[ly] referenc[ing] . . . Plaintiff's age in connection with the alleged adverse

acts" sufficed to plausibly allege an inference of discrimination). To the extent Plaintiff had a

"subjective belief that she was the victim of discrimination" on the basis of her age, this belief,

"no matter how strongly felt, is insufficient to satisfy the burden of offering evidence that could

plausibly support an inference of discrimination." *Allen v. City of New York*, No. 19-CV-3786,

2024 WL 3965697, at *7 (S.D.N.Y. Aug. 28, 2024) (alteration adopted). Accordingly,

Defendant's Motion is granted as to Plaintiff's ADEA claim.

<u>2. Race and National Origin Discrimination</u>

As discussed above, the familiar *McDonnell Douglas* analysis applies to race and

national origin discrimination under Title VII and Section 1981. *See Kirkland-Hudson*, 665 F.

Supp. 3d at 449. Defendant does not dispute that Plaintiff is within a protected class or that she

was qualified for her position. (*See generally* Def's Mem.) The Court has already found that

Plaintiff's constructive discharge constitutes an adverse employment action. *See* supra Section

II.B.1. Accordingly, the only question remaining to determine whether Plaintiff has sufficiently

made a prima facie case is whether Plaintiff's constructive discharge "occurred under

circumstances giving rise to an inference of discrimination." *Streichert v. Town of Chester, N.Y.*,

No. 19-CV-7133, 2022 WL 4449305, at *6 (S.D.N.Y. Sept. 23, 2022).

The Amended Complaint alleges that "there were [seven] Hispanic employees in the

Administration [D]epartment" and that there were a total of "under 20 Hispanic employees" at

Sutton Park. (Am. Compl. ¶ 4.) Plaintiff further alleges that, on March 14, 2021, two of her co-

workers overheard Carroll use the epithet "spic[]" while discussing Plaintiff. (*Id.* ¶ 10.) Plaintiff

also alleges that requests for office equipment by Hispanic employees were denied, while similar

requests by non-Hispanic employees were approved, (*id.* ¶ 20), and that Carroll would ignore her

when she said good morning indicating to Plaintiff that "[Carroll] had animus towards Plaintiff because she [is] Puerto Rican," (*id.* ¶ 21).  Finally, Plaintiff alleges that Carroll terminated one of the seven Hispanic employees in the Administration Department "because she was Puerto Rican and Hispanic."  (*Id.* ¶ 43.)  These allegations fall short of establishing an inference of discrimination on the basis of race or national origin.  Plaintiff has simply not alleged that her constructive discharge was related to her being Hispanic or Puerto Rican.  (*See generally* Am. Compl.)

As mentioned above, "[i]t is well established that a plaintiff's subjective belief that [s]he was the victim of discrimination, no matter how strongly felt, is insufficient to satisfy the burden to plead facts that could plausibly support an inference of discrimination."  *Obah v. ADAPT*, No. 24-CV-5014, 2024 WL 4008184, at *1 (S.D.N.Y. Aug. 30, 2024) (alterations adopted), *appeal pending*, No. 24-2567 (2d Cir. Sept. 27, 2024).  Accordingly, standing alone, Plaintiff's beliefs as to Carroll's reasons for ignoring her are insufficient to support an inference of discrimination.  *See Cruz v. Bernstein Litowitz Berger & Grossman LLP*, No. 20-CV-8596, 2023 WL 2691456, at *13 (S.D.N.Y. Mar. 29, 2023) (noting that being ignored is the type of conduct that "does not support an inference of discrimination").

To the extent Plaintiff alleges she was treated differently than other non-Hispanic or non-Puerto Rican employees, her single allegation as to requests for office equipment is not enough because she has not alleged that co-workers whose requests for equipment were granted were similarly situated to Plaintiff.  *Cf. Braunstein v. Sahara Plaza, LLC*, No. 16-CV-8879, 2021 WL 2650369, at *11 (S.D.N.Y. June 28, 2021) (finding an inference of discrimination where, "[a]lthough [p]laintiff's allegations of disparate treatment lack some specificity, and there is not a perfect correspondence between her conduct and the conduct of her coworkers, . . . [plaintiff]

has alleged that their situations were 'sufficiently similar' . . . ."), *aff'd*, No. 21-2030, 2022 WL

17480962 (2d Cir. Dec. 7, 2022).  And even assuming that Plaintiff has adequately alleged

comparators, Plaintiff has failed to demonstrate any connection between the equipment request

and her constructive discharge.  *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396,

411 (S.D.N.Y. 2014) (granting motion to dismiss where "the only act with respect to which the

Amended Complaint plausibly alleges discriminatory animus" was not linked to material adverse

employment action).

  As for Carroll's comment, it is too thin a reed to support Plaintiff's race and national

origin discrimination claim.  While the use of racial epithets is plainly improper, a stray remark,

without more, is generally insufficient to support an inference of discrimination.  *See Jain v.*

*Marsh Inc.*, No. 08-CV-2515, 2010 WL 743553, at *3 (S.D.N.Y. Mar. 1, 2010) (finding that a

single remark was insufficient to support an inference of discrimination, especially where

"[p]laintiff [did] not claim that any other [of defendant's] employees personally harbored animus

toward him because of his national origin").  In determining whether a remark is a stray remark

that cannot support an inference of discrimination,

> courts consider:  (1) who made the remark (i.e., a decisionmaker, a supervisor, or a
> low-level co-worker); (2) when the remark was made in relation to the employment
> decision at issue; (3) the content of the remark (i.e., whether a reasonable juror
> could view the remark as discriminatory); and (4) the context in which the remark
> was made (i.e., whether it was related to the decision-making process).

*Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 145 (S.D.N.Y. 2021) (citation and quotation

marks omitted).  Here, while Carroll was Plaintiff's supervisor and the remark could be viewed

as discriminatory, it was temporally remote from Plaintiff's constructive discharge—the

comment was allegedly made in March 2021 and Plaintiff's constructive discharge occurred in

September 2021, (Am. Compl ¶¶ 3, 10)—and Plaintiff fails to provide the context for the remark

other than the vague allegation that she heard secondhand that Carroll was discussing Plaintiff,

(*id.* ¶ 10).  *See Desrosiers v. Summit Sec. Servs., Inc.*, No. 21-CV-10941, 2022 WL 13808524, at *7 (S.D.N.Y. Oct. 21, 2022) (finding comments were stray remarks because plaintiff "ha[d] not alleged a sufficient causal nexus between the statements and his termination"); *Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (finding that comments were non-actionable stray remarks because they "[were] not alleged to have arisen in a context at all related to the decision to suspend and later terminate [p]laintiff").  The comment, therefore, is a "stray remark that does not give rise to an inference of discrimination or show that race was the but-for cause of Plaintiff's [constructive discharge]." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 98 (S.D.N.Y. 2023); *see Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 13 (2d Cir. 2019) (summary order) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination.").

Accordingly, because Plaintiff has failed to plausibly allege an inference of discrimination as it relates to her race or national origin and in relation to her constructive discharge, Defendant's Motion is granted as to Plaintiff's claims of discrimination under Title VII and Section 1981.

### 3.  Retaliation

"To present a prima facie case of retaliation under [Title VII, the ADEA, or Section 1981], a plaintiff must show that (1) she participated in an activity protected by Title VII[, the ADEA, or Section 1981], (2) this participation was known to her employer, (3) the employer subjected her to a materially adverse action thereafter, and (4) a causal connection existed between the protected activity and the adverse action." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (quotation marks omitted); *Carr*, 76 F.4th at 178 (noting that

retaliation claims under Title VII, the ADEA, and Section 1981 are subject to the *McDonnell Douglas* analysis).

Defendant contends that Plaintiff has failed to state a plausible claim for retaliation under Title VII, the ADEA, and Section 1981 because Plaintiff has not alleged that she engaged in protected activity, that Sutton Park knew of any protected activity, or that there is any causal connection between a protected activity and adverse action.  (Def's Mem. 20–21.)  The Court disagrees.

While Plaintiff's complaints with the WCHRC and the EEOC clearly constitute a protected activity, *see Medina v. AAM 15 Mgmt., LLC*, 750 F. Supp. 3d 332, 345 (S.D.N.Y. 2024), they cannot be considered for the purpose of Plaintiff's retaliation claims because those protected activities took place after Plaintiff's constructive discharge—Plaintiff filed the WCHRC complaint on December 10, 2021, (Am. Compl. ¶ 45) and her EEOC Charge on June 10, 2022, (*id.* ¶ 48).  "Any actions before [the filing of these complaints] cannot be considered adverse employment actions as a matter of law" for the purpose of a retaliation claim.  *Paupaw-Myrie*, 653 F. Supp. 3d at 103; *see also Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity."), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (summary order).

The only remaining complaint that could be construed as a protected activity is a text on September 9, 2021, from Plaintiff to "Ms. Rodyln [("Rodyln")], [a] management person from [Sutton Park] Corporate," in which Plaintiff described "everything that's been going on including the discrimination and work disruption by [Carroll, Crowe, and Denny] . . . ."  (Am. Compl ¶ 38.)  Defendant argues that "[t]his is not a protected activity," but provides no caselaw

whatsoever in support of that assertion.  (Def's Mem. 21.)  While a "[g]eneralized complaint" is insufficient to constitute a protected activity, *see Mejia v. White Plains Self Storage Corp.*, No. 18-CV-12189, 2020 WL 247995, at *6 (S.D.N.Y. Jan. 16, 2020), an HR complaint can constitute a protected activity if the complaint "complains or is critical about the discriminatory employment practices of [the] employer," *Littlejohn*, 795 F.3d at 318 (alterations adopted) (quotation marks omitted).  Here, in light of the solicitude afforded pro se plaintiffs, the Court finds that Plaintiff's allegation of a complaint to Sutton Park Corporate about discrimination, while admittedly thin, constitutes a protected activity.  *Cf. Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18-CV-507, 2019 WL 5887479, at *16 (S.D.N.Y. Nov. 12, 2019) (finding that plaintiff's complaint was not a protected activity where "she never indicated that she was complaining about discriminatory conduct").

Defendant also argues that "Plaintiff has not plausibly alleged any person at Sutton Park involved with any decision related to the terms and conditions of her employment had any knowledge of the alleged text communication to Ms. Rodyln."  (Def's Mem. 21.)  Plaintiff alleges that Rodyln responded on September 10, 2021, that she would call Plaintiff to discuss her complaint.  (Am. Compl. ¶ 38.)  This is sufficient to plausibly allege general corporate knowledge, which courts have found "when a supervisor, corporate officer, or employee whose job is to investigate and resolve discrimination complaints becomes aware of the protected activity."  *Lee v. Riverbay Corp.*, No. 22-CV-7504, 2024 WL 4312166, at *9 (S.D.N.Y. Sept. 27, 2024) (quoting *Armstrong v. Metro. Transp. Auth.*, No. 07-CV-3561, 2014 WL 4276336, at *20 (S.D.N.Y. Aug. 28, 2014)).  Here, the Court draws inferences in Plaintiff's favor and assumes that Rodyln, a "management person from [Sutton Park] Corporate," (Am. Compl. ¶ 38), is an individual whose knowledge may be imputed to the corporation as a whole.

Defendant also argues that there is no causal connection between any protected activity and any adverse action.  (Def's Mem. 21.)  "[The Second Circuit has long] held that a close temporal relationship between a plaintiff's participation in protected activity and [a defendant's] adverse actions can be sufficient to establish causation."  *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (citation omitted); *see also Medina*, 750 F. Supp. 3d at 354 (noting that "courts in this District and other district courts in the Second Circuit have consistently allowed retaliation claims with gaps of two months between the alleged protected activity and adverse employment action to survive defendants' motion to dismiss" and collecting cases); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (citation and quotation marks omitted)); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (holding that "less than two months" between protected activity and allegedly adverse action were sufficient to establish causation), *abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  A plaintiff's "presentation of a temporal connection" can be "enough, in and of itself . . . to permit a reasonable jury to find causation." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013).  Although the Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *id.* at 128 (citation and quotation marks omitted); a lengthy gap between the alleged protected activity and alleged adverse employment action can

"suggest[], by itself, no causality at all," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001).

Here, Plaintiff's complaint to Rodyln was made on September 9, 2021. Four days later, Plaintiff was constructively discharged. (Am. Compl. 41.) This temporal proximity is clearly sufficient to give rise to a causal connection between Plaintiff's complaint and her constructive discharge. *See Medina*, 750 F. Supp. 3d at 354 (noting that courts regularly deny motions to dismiss where the adverse action occurred between two to three months after the protected activity and collecting cases). Accordingly, Defendant's Motion is denied as to Plaintiff's retaliation claims.[2]

### 4. Hostile Work Environment

"A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Perkins v. U.S. Dep't of the Treasury*, No. 18-CV-8911, 2022 WL 19772, at *15 (S.D.N.Y. Jan. 3, 2022) (same). This standard applies to Plaintiff's Title VII, ADEA, Section 1981, and NYSHRL claims. *See Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *15 (S.D.N.Y. Mar. 30, 2022) (noting the standard applies to Title VII, Section 1981, and the NYSHRL); *Schneidermesser v.*

---

[2] Ordinarily, once the plaintiff has made out a prima facie case of retaliation, the burden shifts to Defendant "to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845. Here, however, the Court's analysis ends with Plaintiff's prima facie case because Defendant has made no effort to articulate a non-retaliatory reason for Plaintiff's constructive discharge. (*See generally* Def's Mem.)

*NYU Grossman Sch. of Med.*, No. 21-CV-7179, 2024 WL 4135701, at *7 n.4 (S.D.N.Y. Sept. 10, 2024) (noting the "same standards apply to hostile work environment claims brought under the ADEA as under Title VII" (alteration adopted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003))).  "At the motion to dismiss stage, . . . a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (alterations, quotation marks, and citation omitted); *Kirkland-Hudson*, 665 F. Supp. 3d at 465 (same).  The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quotation marks and citation omitted). In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  *Id.* (citation omitted).  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe.  They are not intended to promote or enforce civility, gentility or

even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (quotation

marks and citation omitted).  Thus, for example, "[e]xcessive criticism and rudeness do not

constitute a hostile work environment." *Kirkland-Hudson*, 665 F. Supp. 3d at 466 (citation

omitted).

Defendant argues that Plaintiff has failed to plausibly allege circumstances sufficiently

severe or pervasive enough to constitute a hostile work environment.  The Court agrees.  Even

construing the allegations in the light most favorable to Plaintiff, her Complaint and Amended

Complaint do not demonstrate that she experienced "abuse and trauma that is severe." *Isbell*,

316 F. Supp. 3d at 591.  Generally, Plaintiff alleges that Carroll, Crowe, and Denny would

fabricate performance issues, (Am. Compl. ¶¶ 8, 17, 19, 25), that Carroll referred to her as a

"spic" and that Carroll and Denny were "trashing [her] name," (*id.* ¶¶ 10, 14), that Plaintiff

wasn't invited to building events, (*id.* ¶ 27), and that Carroll and Crowe interfered with

Plaintiff's duties, (*id.* ¶¶ 16, 30, 32, 34) and her break time (*id.* ¶ 11).  Taken together, these

allegations fail to establish a hostile work environment.  Even if the Court found that these

incidents met the "sufficiently severe or pervasive" standard, Plaintiff has not plausibly alleged a

connection between most of these incidents and a protected category.  As discussed above,

comments allegedly referring to Plaintiff's age do not give rise to an inference of discrimination.

*See* supra Section II.B.1.  As for Carroll's calling Plaintiff a "spic," this single remark does not

qualify as extraordinarily severe.  *See Atkins v. Walmart, Inc.*, No. 20-CV-1217, 2022 WL

1320300, at *14 (N.D.N.Y. May 2, 2022) (holding that statements uttered during a "single

incident[] . . . were not sufficiently pervasive to support a hostile-work environment claim"),

*aff'd*, No. 22-1192, 2023 WL 3361807 (2d Cir. May 11, 2023); *Blue v. City of Hartford*, No. 18-

CV-974, 2019 WL 7882565, at *6 (D. Conn. Oct. 22, 2019) (finding that the use of a racial

epithet during a single incident was not sufficiently severe or pervasive to support a hostile work environment claim); *cf. Little v. R & L Carriers, Inc.*, No. 24-CV-836, 2025 WL 744276, at *12 (D. Conn. Mar. 9, 2025) (finding that the use of racial epithets and physical threats directed at plaintiff by three different co-workers sufficed to demonstrate harassment that was severe and pervasive). The Second Circuit has held that "an obscene and humiliating verbal tirade that undermines the victim's authority in the workplace" could meet the "extraordinarily severe" standard. *Mathirampuzha*, 548 F.3d at 79 (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)). Some factors that "would enhance the statement's severity for the purpose of [this] analysis" include "epithets," revealing "personally sensitive or private information," or levying "salacious allegations." *Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 564 (S.D.N.Y. 2022). Carroll's use of the epithet does not arise to those circumstances in which courts in the Second Circuit have found that a single comment or verbal incident meets the "extraordinarily severe" standard. *See, e.g.*, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 264 (2d Cir. 2023) (denying summary judgment where a jury could find sufficient an incident "involv[ing] a perceived physical threat" and "directly challeng[ing] [the plaintiff's] authority and compromis[ing] her ability to fulfill her supervisory duties"); *Howley*, 217 F.3d at 154 (denying summary judgment where a jury could find sufficient an incident where plaintiff was called vituperative and sexually explicit names and the screed graphically suggested that the plaintiff had performed sexual acts to attain her position); *cf. Johnstone v. Village of Monticello*, No. 14-CV-9523, 2016 WL 9078806, at *6 (S.D.N.Y. June 15, 2016) (finding that a single tirade, though "undeniably laden with offensive, race-related slurs," was insufficient to support plaintiff's claim of a hostile work environment). At bottom, "[w]hile there may well exist circumstances where a single use of a racial slur could rise to the level of a hostile work

environment, the circumstances surrounding [Carroll's] comment do not indicate that the comment was severe enough on its own to transform the workplace of a reasonable employee in Plaintiff's position." *Thompson v. Shutterstock, Inc.*, No. 23-CV-4155, 2024 WL 2943813, at *12 (S.D.N.Y. June 10, 2024) (alterations adopted) (citation and internal quotation marks omitted).

"While 'bullying and harassment have no place in the workplace, unless they are motivated by the victim's membership in a protected class, they do not provide the basis for an action under' federal anti-discrimination laws." *Stinson v. Morningstar Credit Ratings, LLC*, No. 22-CV-6164, 2024 WL 3848515, at *19 (S.D.N.Y. Aug. 16, 2024) (alterations adopted) (quoting *Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 574 (S.D.N.Y. 2014)).  Accordingly, Defendant's Motion is granted as to Plaintiff's hostile work environment claims.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is denied in part and granted in part. Specifically, the Motion is denied with respect to Plaintiff's retaliation claims and granted with respect to all other claims.  Because this is the first adjudication of her claims on the merits, Plaintiff's claims of discrimination and hostile work environment are dismissed without prejudice.  If Plaintiff wishes to file a third amended complaint alleging additional facts and otherwise addressing the deficiencies the Court has identified, Plaintiff must do so within 30 days of the date of this Order.  The third amended complaint will replace, not supplement, the previous complaints.  The Clerk of the Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 24.)

SO ORDERED.

Dated:    March 26, 2025
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

30